IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09CV29-1-MU

| | |
|---|---|
| FLOYD A. WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| BUTCH JACKSON, Supt., ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment and supporting memorandum (Doc. Nos. 4 and 5), filed March 16, 2009; and Petitioner's Motion to Amend[1] (Doc. No. 8), filed April 3, 2009.

For the reasons set forth below, this Court denies Petitioner's Motion for Discoveries, grants Respondent's Motion for Summary Judgment, and dismisses Petitioner's Petition for a Writ of Habeas Corpus.

## **PROCEDURAL HISTORY**

On May 18, 2007, in the Superior Court in Cleveland County, Petitioner was found guilty, after trial by jury, of robbery with a dangerous weapon. Judge Smith sentenced Petitioner to a term of 82 to 108 months' imprisonment.

Petitioner filed an appeal of right to the North Carolina Court of Appeals. On April 1, 2008, in a unanimous, unpublished opinion, the court of appeals found no error in Petitioner's

---

[1] By his Motion to amend Petitioner seeks to substitute the proper party as the Respondent. Such motion is granted and Mr. Alvin Keller will be substituted as the Respondent.

criminal judgment. State v. Williams, No. COA07-877, 2008 WL 850476 (N.C. Ct. App. Apr. 1, 2008).

On or about August 7, 2008, Petitioner filed a pro se Motion for Appropriate Relief (MAR) in the Cleveland County Superior Court. On August 8, 2008, the Superior Court denied Petitioner's MAR. On August 27, 2008, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals. On September 17, 2008, the North Carolina Court of Appeals denied Petitioner's certiorari petition. On October 8, 2008, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Supreme Court. The supreme court dismissed this petition on December 11, 2008. State v. Williams, No. 469P08, 2008 WL 5459429 (N.C. S. Ct. Dec. 11, 2008).

On January 5, 2009, Petitioner timely filed a Petition for Writ of Habeas Corpus with this Court. In his habeas petition Petitioner alleges that : 1) he received ineffective assistance of trial and appellate counsel; 2) the trial court erred in denying his request for a diminished capacity jury instruction; and 3) the trial court denied him his due process right to a competency hearing.

## LEGAL ANALYSIS

### A. STANDARD OF REVIEW UNDER 28 U. S. C. § 2254

The threshold inquiries for a federal court reviewing a federal habeas petition are whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are procedurally barred. 28 U.S.C. § 2254. In order to exhaust a claim a petitioner must have fairly presented it to the state courts. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

If a petitioner's claim is unexhausted, it may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the

state court. See id. However, when the procedural bar that gives rise to exhaustion provides an independent and adequate state law ground for the conviction and sentence it prevents federal habeas review of the defaulted claim unless the petitioner can establish cause and prejudice for the default. See id.

If a petitioner's claims are exhausted and not procedurally barred, the federal court must next examine whether or not the petitioner's claims were "adjudicated on the merits" by the state court. If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in 28 U.S.C. § 2254(d) applies. If a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits,[2] a federal court reviews questions of law and mixed questions of law and fact de novo. Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

The standard of review set forth in § 2254(d) is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The standard of review is "quite deferential to the rulings of the state courts." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). State court decisions are to be given the benefit of the doubt. Bell v. Cone, 543 U.S. 447, 455 (2005). This deference extends to summary dismissals. Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000). A habeas petitioner bears the burden of establishing his claim. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

Pursuant to § 2254(d) a federal court may not grant a writ of habeas corpus unless the

---

[2] If the state court has not ruled on the merits of a claim because it has expressly denied a habeas petitioner's claim based upon an independent and adequate state procedural rule such claim is considered procedurally defaulted in federal court. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ." 28 U.S.C. § 2254(d)(1) and (2).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" occurs when a state court correctly identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a petitioner's case. Rompilla v. Beard, 545 U.S. 374 (2005)(citations omitted). An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. See Williams, 529 U.S. at 413; Schriro v. Landrigan, 127 S. Ct. 1933, 1939 (2007)("[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher burden.") Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Williams, 529 U.S. at 413.

When examining whether a state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" a reviewing court must be mindful that a "determination of a factual issue made by

4

a State court shall be presumed correct" unless a petitioner rebuts this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(d)(2); 28 U.S.C. § 2254(e)(1); Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## B. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner alleges that he received ineffective assistance of trial counsel. More specifically, Petitioner alleges that his counsel failed to

> secure records or pursue inquiries about Petitioner['s] hospitalization while out on bond. Petitioner is diagnos[ed] as a schizophren[ic] with P.T.S.D. from the military. Counsel failed to make inquiries about any of this. But instead [relied] on a court appointed psychiatrist on the day of trial and decided to forgo an insanity deffense [sic] or diminished capacity deffense [sic] and simply abandoned his client's only defense. And on direct appeal, counsel did not even argue one error an[d] it was deemed abandoned.

(Doc. No. 1 at ¶ 12.)

Petitioner raised this issue in his Motion for Appropriate Relief (MAR) and in his Petition for Writ of Certiorari.[3] Consequently, the standard of review set forth in § 2254(d) applies to this claim. Therefore, relief may not be granted unless the North Carolina Court of Appeals' adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

---

[3] The North Carolina Court of Appeals summarily denied Petitioner's petition for writ of certiorari. However, because the denial of the certiorari petition was summary in nature, this Court will look to the MAR opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-03 (1991); accord Skipper v. French, 130 F.3d 603, 609 (4th Cir. 1997).

In ruling on this issue the MAR court stated:

> It is noted that the Defendant's primary defense presented at trial was his contention that his mental illness rendered [him] incapable of making a knowing and intelligent waiver of his Fifth Amendment rights against self-incrimination. Defense counsel obtained court approval for funds for an expert, Dr. John Warren, who examined the Defendant and testified concerning his mental status. Based upon this testimony, the trial judge made findings of fact and ruled:
> 1. The defendant had the capacity to waive his constitutional rights, which he in fact did.
> 2. The defendant's statement, which was fully and completely recorded, exhibits nothing indicating any hallucinatory episodes.
> 3. No other evidence suggests that the defendant's self-disclosed mental condition undermines the reliability of the statement or taints the otherwise voluntary waiver of his rights. While his mental diagnosis may have some relevance as to what weight should be given his statement, there is nothing that would justify suppression.
> . . .
> [t]here is no basis for the Defendant's contention concerning ineffective assistance of counsel. Trial counsel did, in fact, present evidence concerning the Defendant's mental health history using it apparently to the best available use under the factual scenario as presented.

(Doc. No. 5-10.)

The established Supreme Court precedent governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md.,

956 F.2d 1290, 1297-99 (4th Cir. 1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290. Moreover, trial counsel is given "wide latitude" to make "tactical decisions" regarding their clients representation. Strickland, 466 U.S. at 690.

A review of the record in the instant case reveals that Petitioner's trial counsel did present evidence indicating that Petitioner suffered from schizophrenia and post-traumatic stress disorder (PTSD). Dr. John Warren, a clinical psychologist and expert in forensic psychology, testified on Petitioner's behalf that Petitioner had a history of mental health issues, including paranoid schizophrenia and PTSD; that Petitioner's history of schizophrenia included hearing voices; that Petitioner had a significant schizophrenic episode which required hospitalization after he was released from jail following the robbery for which he was on trial; and that the episode could have been triggered by the commission of the robbery and resulting criminal charge. (Doc. No. 5-4 at 9-24.) Dr. Warren based his testimony upon a review of Petitioner's Veteran's Hospital records and his own forensic interview of Petitioner. (Doc. No. 5-4 at 9, 12-14.) Dr. Warren testified at length about the symptoms of Petitioner's mental illnesses. (Doc. No. 5-4 at 10-12.) Petitioner's Veteran's Hospital records were testified to extensively and marked for identification but were never admitted into evidence. (Doc. No. 5-4 at 23-24.)

Trial counsel also presented the testimony of Petitioner's sister who testified concerning Petitioner's schizophrenic episode after he was released on bond. (Doc. No. 5-4 at 30-32.) In addition, trial counsel presented the testimony of Petitioner's mother who testified that she witnessed Petitioner having a schizophrenic episode a week or so before the robbery and that she did not believe that he was taking his medication. (Doc. No. 5-4 at 34-38.)

7

Given the above testimony it is clear that counsel did investigate Petitioner's mental health and did present such information to the jury at trial. Using Petitioner's mental health, counsel attacked the voluntariness of Petitioner's confession. Counsel also strenuously argued for a diminished capacity jury instruction but ultimately the trial court refused to give one. While it is true that trial counsel chose not to present an insanity defense, there is nothing in the record to indicate that Petitioner was incapable of knowing the nature and quality of his actions, or that they were wrong. Indeed, Petitioner's actions surrounding the robbery – such as hiding in the back seat, hiding the stolen money behind the seat, arranging for a get away car, and providing a false name to the police when he was caught – indicate that Petitioner did understand that his actions were wrong. Based upon the above, Petitioner has not established that the MAR court's adjudication of this issue was "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

## C. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner also alleges that his appellate counsel was ineffective for failing to present in his appellate brief an assignment of error with regard to the trial court's refusal to give a diminished capacity instruction.

Petitioner raised this argument in his Motion for Appropriate Relief (MAR) and in his Petition for Writ of Certiorari where it was summarily denied ion both instances. A summary dismissal is considered an adjudication on the merits sufficient to trigger § 2254(d)'s standard of review. See Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000)(en banc). As set forth below, the state court's decision is correct and is not contrary to nor involves an unreasonable application of

8

clearly established law as set forth by the United States Supreme Court. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings.

Again, ineffective assistance of counsel claims are governed by the principles set forth in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). As previously stated, in Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290. Moreover, trial counsel is given "wide latitude" to make "tactical decisions" regarding their clients representation. Strickland, 466 U.S. at 690.

Petitioner's trial counsel requested and argued strenuously for a diminished capacity instruction. (Doc. No. 5-4 at 46- 49.) The state trial court, noting a lack of case law in a similar context, denied trial counsel's request. (Doc. No. 5-4 at 51-52.) Petitioner provides no state case law that would establish that the trial court's ruling was erroneous. As such, he has not established that appellate counsel was ineffective for failing to argue this issue on appeal or that he was prejudiced. Because Petitioner cannot establish that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding his claim is dismissed.

## D. DIMINISHED CAPACITY JURY INSTRUCTION

Petitioner also alleges that the trial court erred in denying his request for a diminished capacity jury instruction. Petitioner asserts that there was more than enough evidence to warrant such an instruction. In his response to the Motion for Summary Judgment Petitioner concedes this issue. Based upon Petitioner's concession, and for the reasons set forth in Respondent's Motion for Summary Judgment, this claim is dismissed.

## E. COMPETENCY HEARING

Petitioner also alleges that the trial court denied him his due process right to a competency hearing.

Petitioner raised this issue in his Motion for Appropriate Relief (MAR). The MAR court denied this claim stating:

> Given the fact that the trial court heard evidence concerning Defendant's prior mental illness and his capacity to waive [sic] his Fifth Amendment rights, together with the fact that he was examined by an experienced mental health professional, who apparently found no reason to suggest any lack of capacity to proceed, there is no basis for defendant's contention that he was not competent to stand trial.

(Doc. No. 5-10.) Petitioner also raised this issue in a Petition for Writ of Certiorari.[4] The North Carolina Court of Appeals summarily denied Petitioner's petition. Because the MAR court

---

[4] Because the denial of the certiorari petition was summary in nature, this Court will look to the MAR opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-03 (1991); accord Skipper v. French, 130 F.3d 603, 609 (4th Cir. 1997).

adjudicated this claim on the merits, the standard of review set forth in § 2254(d) applies to this claim. Therefore, relief may not be granted unless the North Carolina Court of Appeals' adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Supreme Court precedent holds that when a state tries and convicts a mentally incompetent person[5] it violates the Due Process clause of the Fourteenth Amendment. Drope v. Missouri, 420 U.S. 162, 171-72 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966). The Supreme Court, however, has not prescribed the exact mechanisms a state court should employ to protect a defendant's right not to be tried while incompetent. Rather, the Court mandates only that the procedures followed must be "adequate," Drope, 420 U.S. at 172, and that when a "significant" or "bona fide" doubt arises concerning a defendant's competence, he is entitled to a hearing. Drope 420 U.S. at 172-73; Pate, 383 U.S. at 385. "[T]here are . . . no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." Drope 420 U.S. at 172. In determining whether to grant a hearing, the trial court must examine all of the evidence before it, including opinions of defense counsel, evidence of irrational behavior, defendant's demeanor, and the medical evidence." Id. at 177 n.13, 180. In assessing the adequacy of the procedures employed in state court, the focus should be on "what the trial court did in light of what it knew." Sheley v. Singletary, 955 F.2d 1434, 1439 (11th cir.

---

[5] The test for mental competence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rationale understanding and whether he has a rational as well as factual understanding of the proceedings against him." See Dusky v. United States, 362 U.S. 402, 402 (1960).

11

1992).

In the instant case, this Court cannot conclude that the trial court's failure to hold a competency hearing was contrary to or involved an unreasonable application of Supreme Court precedent. Petitioner does not point to any, and this Court cannot find any indication in the transcript to indicate that Petitioner's behavior in Court was unusual. The arresting officers did not testify to strange, inexplicable behavior. Indeed, one of the officers who interviewed Petitioner described him as articulate and calm. (Doc. No. 5-3 at 58.) This officer further testified that at no time during the interview was he concerned that Petitioner did not understand what was happening. (Doc. No. 5-3 at 58.) Nor did Dr. Warren's testimony support a conclusion that Petitioner was incompetent to stand trial. Dr. Warren testified that on the day he examined Petitioner he had "apparent good contact with reality; speech at normal rate, flow, rhythm, and volume; thought process is clear and coherent; direct and rationale cognition, provides his name and location and reason for the appointment . . . ." (Doc. No. 5-3 at 88.) While the evidence clearly supported a conclusion that Petitioner suffered from a mental illness, such conclusion does not necessarily render him incompetent. See Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000)("not every manifestation of mental illness demonstrates incompetence to stand trial . . . .")

Based upon the above, Petitioner has not established that the North Carolina Court of Appeals' adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[t]he more general the rule, the more leeway courts have in reaching outcomes in

case-by-case determinations.") Consequently, this claim is dismissed.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Petitioner's Motion to Amend (Doc. No. 8) is **GRANTED**;

2. The Clerk is directed to substitute Mr. Alvin Keller as the Respondent in this matter;

3. Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**; and

4. Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED**.

Signed: June 2, 2010

Graham C. Mullen
United States District Judge